|  |  |
|---|---|
| ) | **United States District Court** |
| **William Piphus** ) | **Northern District of Illinois** |
| **JoAnn Piphus, et al** ) | |
| **Plaintiffs** ) | 1:12-cv-07257 |
| **v.** ) | Judge Charles R. Norgle, Sr |
| **Board of Education of** ) | Magistrate Judge Morton Denlow |
| **City Of Chicago,** ) | |
| **Rahm Emmauel, Mayor** ) | |
| **Jean Claude Brizard CEO** ) | **Demand for Jury Trial** |
| **Jeff Wright** ) | **RECEIVED** |
| **LeAndra Khan** ) | |
| **Defendants** ) | SEP 1 1 2012 |

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## Complaint

### I. Jurisdiction and Venue

1.) The Plaintiffs believe this court has venue for this case in pursuant to:

2.) A.) Procedural Due Process...................14th Amendment; 435 US §247,

28 USC§ 1343, 42 USC§ §1983, 1985((3) and 1986.

3.) B.) Freedom of Expression ...............1st, 5th and14th Amendment

4.) C.) Rights of Equal Protection...........18 USC§ 241, 42USC § 1981

5.) D.) The Causes of Action the Plaintiffs alleged are the facts from

allegations occurring in this Northern District of Illinois.

6.) E.) All parties in petition resides inside the State of Illinois

7.) F.) The amount of this controversy is over $75,000.

## II. Introduction

8.)   This action arises under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution; under federal law, specifically, 42 U.S.C. §§  247, 14141, 1983, 1985 (3) and 1986, 18 USC§ 241, 28 USC§ 1343 under Federal  and State Laws for intentional and/or negligent infliction of emotional distress , negligence, negligent supervision, gross negligence, false arrest, failure to implement policy, customs and practices,  and civil conspiracy. We the Plaintiffs charge that the City of Chicago through its agency and management selection,  mainly the Chicago  Board of Education with the leadership of Jean-Claude Brizard as CEO, Board Members and Commissioners that administers of policy, its Officers, Administrators or Employees held accountable for their actions that violate or break the law.


## III. Parties

### Plaintiffs

9.)        JoAnn Piphus, Chicago, Illinois is Parent of "Pxx".

10.)        William Piphus, Chicago, Illinois is Parent of "Pxx".

11.)         Pxx (minor), Chicago, Illinois

**<u>Defendants</u>**

**12.)** **Rahm Emanuel, Mayor – City of Chicago**

**13.)** **Jean Claude Brizard, CEO –Chicago Public Schools**

**14.)** **Jeff Wright- Principal (at time of incident)**

**15.)** **LeeAndra Khan- Vice Principal**

**IV. Facts:**

16.)    On March 26, 2012, Mr. and Mrs. Piphus received a call from the school (Ms.

Khan Assistant Principal) at approximately 12:30 pm, regarding pornography on

"Pxx"Twitter Page, after ten minutes of discussing this issue she stated that someone

wanted to press charges against "Pxx" never stating that we should come to the school.

17.)    We, Mr. and Mrs. Piphus, rushed up to the school and spoke with Ms. Khan,

who took us to her office to show the Twitter Page of "Pxx."

18.) Ms. Khan explained that she and Mr. Wright felt that the "<u>pictures</u>" of "Pxx was

pornographic  in which we disputed and informed Ms. Khan that the "<u>picture</u>" was

"Pxx" in yellow hot pants that she wore around the house only and not what was being

alleged by Ms. Khan and Mr. Wright -" yellow panties."

19.) Ms. Khan stated the title of her twitter page was inappropriate -"Chubby Baby."

**Page 3**

20.) We explained that "Chubby baby" is a nickname used for years by family and friends and we were upset about "Kiss my Pink Box" and we wanted to know what it meant.

21.) After ten or fifteen minutes of discussion about the web page Mr. and Mrs. Piphus asked to see "Pxx" only to find out that "Pxx" had been and still was being interrogated by two Police Officers without the presence of a Chicago School staff member.

22)  Ms. Khan took us to the Officers assigned space within the school.

23.) "Pxx" was sitting outside the Police Officers office.

24.)  The Police Officer explained that the parents and accuser wanted to press assault charges.

25.)  The Police Officer brought all parties (parents and minor-accusers) Mr. and Mrs. Piphus and Minor "Pxx" into the room (no school employee present).

26.)  In the presence of all parties the minor accuser stated that she did not see "Pxx" hit or kick her, but she saw her face while looking up from the ground (outside Leo High- party cancelled and everyone put out of gymnasium)as she was being beaten.

27.) The Police Officer explained that "PXX" was being charged because on her Twitter page she stated that "we beat that girl good" (never stating a name).

**Page 4**

28.) in addition, besides the accuser's incident (There were more than five fights inside and outside, at Leo High School).

29.) Joanna explained that she was trash talking to get more followers to come to her twitter account and to not look like a lame.

30.) The Police Officer said, because she had "taken pictures" of blood from the gymnasium's of Leo High School's floor (later proven pictures were down- loaded from other Twitter accounts) and the statement she made on her web site –"she is guilty".

31.)    The Police Officer asked the parents of accusers "do you still want to press charges" and the parents stated "Yes."

32.)    The Police Officer then told Mr./ Mrs. Piphus and "Pxx" to leave the room so that she could take the statement and file charges pending the arrest of "Pxx".

33.)    The Police Officer called us back in the room after the accusers had left and told us that "she was going to do us a favor" by not arresting "Pxx" on Monday, March 26, 2012, but instructed Mr. and Mrs. Piphus to bring "Pxx" back to school the next day (March 27, 2012) to be charged and arrested.

34.) Mr. and Mrs. Piphus spoke to Principal Jeff Wright and told him that no due process had taken place and that action taken was against the law.

35.) Parents asked if "Pxx" was going to be suspended and Mr. Wright stated "he would write it up and get back to us and possibly it would be for a group level 3 or 5 violation of school policy."

36.) Mr. Wright was informed of the arrest by Mr. and Mrs. Piphus and he stated that "once it becomes a police matter, we have nothing to do with it."

37.) Mr. and Mrs. Piphus, in complete shock, took "Pxx" home and started calling Chicago Public School Safety and Security as other avenues for help.

38.) Mr. Wagner of Safety and Security, (Parents called three times before arrest and after), stated "once it becomes a police matter, we have nothing to do with it."

39.) Ms. Piphus called the Chicago Public School Headquarters, explained the situation and was still referred back to Mr. Wagner.

40.) Mr. Piphus, on March 27, 2012, was at the school at 8:00 am and asked Mr. Wright how long "Pxx" was going to be suspended for?

41.) Mr. Wright stated he did not know and Mr. Piphus asked him if he had saw the pictures of the email forwarded to him and his staff of the actual people who had <u>taken</u> the pictures of the bloody floor and Mr. Wright said yes, and again Mr. Piphus stated that what had transpired upon "Pxx" was wrong and again he said he would get back to me.

42.) Mr. and Mrs. Piphus brought "Pxx" back to the school to be arrested on

**Page 6**

Tuesday March 27, 2012 at approximately 11:00 am.

43.) Upon entering the school, Mr. and Mrs. Piphus ran into Ms. Khan.

44.) We asked Ms. Khan about the suspension and she told us that there would be no suspension.

45.) King College Prep personnel sent Mr. and Mrs. Piphus and "Pxx" to the Office where the police were stationed inside the school.

46.) Mr./ Mrs. Piphus left "Pxx" with the Police Officer who told Mr. and Mrs. Piphus to leave the building, "go home or to the Juvenile Intervention and Support Center (JICS"), located at 3900 S. California Avenue and wait in the parking lot for her to call," while the Officer, had "Pxx" processed (arrested).

47.) "Pxx" was handcuffed at the school, and transported by another set of Police Officers.

48.)    Again, when fully informed the next day there was still no response to the incident of minor "Pxx" from Mr. Wright or the Board of Education to Plaintiff.

49.) Within a short time period,  thereafter, Mr. Wright finally responded with a letter to the King College Prep's community, stating that he was resigning and taking a new position out of state (Wisconsin).

50.)  From March 27, 2012 until today, Mr. and Mrs. Piphus has asked the question: to the Chicago Board of Education, CPS Safety and Security Staff,

"What are the current established procedures to address when a

**Page 7**

Stranger walks into a school from off the street and states that a student

has violated the law, the alleged act happened off campus and wants to

press charges against a student?"

51) From March 27, 2012 until today, Mr. and Mrs. Piphus has asked the question: to the Chicago Board of Education, CPS Safety and Security staff, "is the Chicago Public School, specifically King College Prep with assigned Police Officers, a police station (state) or a school of institutional learning'?.

52.) From March 27, 2012 until today Mr. and Mrs. Piphus has asked the question: to the Chicago Board of Education, CPS Safety and Security staff, "where is the CPS written report of the incident regarding "Pxx" ?.

53.) From March 27, 2012 until today Mr. and Mrs. Piphus has asked the question: to the Chicago Board of Education, CPS Safety and Security staff, "who is in charge of Chicago Public Schools Security and Safety: CPS Safety and Security or the Chicago Police Department?"

54.) From March 27, 2012 until today Mr. and Mrs. Piphus has asked the question: to the Chicago Board of Education, CPS Safety and Security staff,

"How can the school, allow police officers to remove "Pxx" from classroom without notifying parents and without Chicago Public School personnel being present during an interrogation?"

**Page 8**

55.) The plaintiffs allege and believe that there is a double standard in issuing discipline at King College Prep, whereas Officer Gross son, a sophomore, in May 2012, instigated a fight, drew blood and did not receive discipline as established by the Board of Education.

56.) From March 26, 2012 until today "Pxx" has nightmares and feels that Chicago Public School is not a place of safety.

57.) "Pxx and Mr./ Mrs. Piphus feels the humiliation of the false arrest on school property, in front of "P"s peers, handcuffed, charged and found guilty all within a twenty-four period to be cruel and unusual punishment.

58.) The Plaintiffs believes strongly that the Defendants evasiveness to provide an answer cannot be simply ignored and the application of the *gray area* cannot be explained to fit, nor be applied.

59.) Plaintiffs allege if there is no Standard Operating Procedure in place, then the existing law must be supreme and takes on precedent as the applicable law to engage this incident, "P"; the application of law must be:

<u>To Protect the Minor</u> (First)

60.) The Plaintiffs asked, "What other rights do juveniles have when they are under arrest in State of Illinois?"

Page 9

61.) The Plaintiff believes and is informed that our rights are protected under the law and enforceable by the law without reservations.

62.) Our pleas to the defendants that the actions being taken, at the time, against minor "Pxx" were erroneous and unlawful.

63.) Therefore, the Plaintiffs come before these courts humbly with a plea for legal justice.

## V. Causes of Actions

## COUNT I

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (General Allegations)

64.) *Plaintiffs re-allege and by referencing to the allegations in paragraphs 1-63 of this Complaint.*

65.) In committing the acts in the complaint, Defendants acted under color of law to deprive Plaintiffs of certain constitutionally protected rights under the the Constitution of the United States including, but not limited to: a) the right of freedom of speech and freedom of expressions; b) the right not to be deprived of liberty without due process of law; c) the right of innocent until proven guilty under due process of the law; d) the right to be free from false prosecution leading to false arrest, and other civil liberties by persons acting under color of state law.

66.) In violating Plaintiffs' rights as stated above, defendants acted under color, with the power to prevent and protect Plaintiff "Pxx", allowed an unauthorized,

warrantless arrest of Plaintiff "Pxx", a student of King College Prep, on Chicago Public School's property.

67.) The illegal and warrantless arrest set in motion the violation of Plaintiffs' rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the Constitution.

68.) As a direct and as a result of the violation of Plaintiff's constitutional rights by the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C §1983.

## Count II

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Failure to Implement Appropriate Policies, Customs and Practices)

69.) Plaintiffs re-allege by referencing the allegations in paragraphs 1-63 of this Complaint.

70.) Plaintiffs alleged that the Defendant City of Chicago, with its Mayor, Rahm Emanuel has a duty and vision to ensure that the rights of minors, in the care of the Chicago Public Schools under the leadership of Jean Claude Brizard, CEO create a concise and specific set of rules, policies and tactical agenda regarding strangers entering the school to press charges against a Chicago Public School student.

71.) Plaintiffs allege that the Defendant City of Chicago, by allowing Police Officers to be placed within the Chicago Public Schools, have created a Police State within the schools, which is not governed by any prescription of the laws or bona fide judicial prudence as governance and no true ramification for legal actions.

72.) The absence of transparent policies, practices, customs, rather implemented or followed or by custom and the lack of evenly applied controls and treatment has caused severe long term emotional distress to the Plaintiffs, and Plaintiffs are entitled to compensatory and punitive damages.

## Count III

### Violation of Civil Rights Pursuant to Title 14th Amendment; 435 US§247
### (Procedural Due Process)

73.)    Plaintiffs re-allege by reference the allegations in paragraphs 1-63 of this Complaint.

74.)    Defendant Khan and Wright, in concert with the other Defendants at the scene, intentionally violated the civil rights of the Plaintiffs with total disregard for Plaintiffs' protected rights, even after being informed that the process was illegal.

75.)    The conduct of Defendants, under the color of law, either with the specific intent to violate the Plaintiffs' civil rights or with a reckless disregard of the probability of facts for innocence or truth, caused severe emotional distress to the Plaintiffs, and Plaintiffs are entitled to compensatory and punitive damages.

## Count IV.

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Gross Negligence)

76.)    Plaintiffs re-allege by referencing the allegations set forth in paragraphs 1-50 of this Complaint.

77.)    Defendant Khan did not call Plaintiff's immediately when the strangers entered the school with the intent to cause harm to "Pxx", to press charges against "Pxx", and never telling Plaintiff's to come to the school immediately, failed in her duties to ensure "Pxx" safety within the Chicago Public School.

78)    Plaintiffs allege the Defendants actions caused a conscious violation of "Pxx's" rights to safety.

79.)    The Plaintiffs alleged that by enrolling "Pxx" in Chicago Public School a

contract binds Defendants to actively provide due care for "Pxx" safety.

## Count V

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

### (Negligence)

80.)   Plaintiffs re-allege by referencing the allegations set forth in paragraphs        63 of this Complaint.

81.)   Plaintiffs allege Defendants, having the power to prevent, aided and allowed accusers to move forward with warrantless and illegal witch hunt that caused and ("disturbed the orderly flow of the school's operations").

82.)   Plaintiffs allege that defendant Wright and Khan allowed the parents of the accuser to dictate Chicago Board of education policy by not referring accusers back to the correct venue initially if they wanted to press charges and as matter of police.

83.)   Each Defendant owed Plaintiff "Pxx" the color of duty to use due care or the duty to prevent aforementioned incident.

84).   In committing the acts, each Defendant negligently breached their duty to use due diligence, which resulted in the severe injuries and damages to the Plaintiffs.

## Count VI.

### Violation of Civil Rights Pursuant to Title 18, U.S.C., Section 241, 42 USC 1983

### (Civil Conspiracy)

85.)   Plaintiffs re-allege by reference the allegations in paragraphs 1-63 of this Complaint.

Page 13

86.)    The Plaintiffs allege Defendant Wright and Khan, under the color of law, each or as a group, conspired in the execution of their official duties, used actions that caused plaintiffs irreparable injuries, while each had the power to prevent harm, under customs or by procedures or by law.

87.) Plaintiffs alleged, being informed the defendants harmed, inflicted suffering by not taking illegal due process seriously by stating "(when the police is involved, it's out of our hands)", actions not to prevent, conspired with other defendants parties to fortify the injuries to plaintiffs.

88.)    Plaintiff allege Defendants, under the color of law, silence thereby caused the plaintiff emotional harm by being unable to neither defend nor protect Plaintiffs from this illegal process.

89.)    Plaintiffs allege and charge that Defendant Mr. Jeff Wright, Principal was informed by Plaintiffs that action being taken was unlawful and due process was not taking place.

90.)    Again, when fully informed the next day there was still no response to the incident of minor "Pxx" and stated that he would get back to Plaintiff;

91.) A short time period thereafter, Mr. Wright finally responded with a letter to the King College Prep's community, stating that he was resigning and taking a new position out of state (Wisconsin).

92.)    We the Plaintiffs allege that after approximately six years serving as principal and six weeks before summer break moved forward with his urgent exit strategy unimpeded, at the same time not answering the real pleas at hand, to protect and the duties of his employment to prevent harm to plaintiff "Pxx".

93.)    The Plaintiffs allege and charge that Defendant Wright weighed the gravity, the uncertainty of the situation, and sought protection – his reputation.

Page 14

94.) The Plaintiffs allege and charge that Defendant Wright being informed of the veracity with regards to "Pxx" stated, (it was a police matter and out the hands of the school) yet held fastened to the idea and/or slanderous position he saw pornography on "Pxx's Twitter page.

95.) The Plaintiffs are alleging and charging that the Defendant Wright's staff (teacher) made an inquiry about what was going on and his statement to them was "a matter of pornography "pictures" found on student's Twitter page", and continued injuries to plaintiffs.

96.) The Plaintiffs are alleging that this information given out would be part of the driving forces that later for "Pxx" being labeled as a whore by peers which was and continue still to be most emotionally hurtful to plaintiff(s) "Pxx"s.

97.) The Plaintiffs' are alleging that Defendant Wright being informed by Plaintiff that due process was not taking placing for plaintiff "Pxx", after learning of imminent arrest, rescinded suspension, to protect the Chicago Board of Education from their responsibilities in the improper handling of their official duties.

98.) The Plaintiffs are alleging that Defendants Wright and Khan casted harm on the Plaintiffs' by continuing to state that "once the police take over an incident we have nothing to do with it anymore."

99) Plaintiffs further charge that as a result of defendant Wright's actions and inactions, or having the power to prevent, or officially to discharge his duties as leader-administrator fortified the injuries and imprinted critical harm to Plaintiffs.

100.) The Plaintiffs are alleging that through the "code of silence", the Chicago Board of Education aligned with King College Prep administration has conspired to deny Plaintiffs a copy of the report from the Officers or any documentation of the incident,

Page 15

interrogation and other facts, even though the arrest was initiated by the Defendants at King College Prep, and continues to harm Plaintiffs.

101)   The Defendants' actions involving aforementioned incident participated in a common design through a concert of action to protect Officers by making overtly false statements in their reports regarding the circumstances surrounding the Plaintiff "Pxx's" incident.

102.)   In committing the aforementioned acts, each Defendant directly and proximately injured, damaged, libeled, and caused emotional distress to the Plaintiffs.

<u>Count VII</u>

Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
(False Arrest)

103.)   Plaintiffs re-allege by referencing the allegations  in paragraphs 1-63 of this Complaint.

104.)   Plaintiffs allege and charge that Defendants Wright and Khan's causable actions were not to preventing harm, protecting "Pxx" and allowing illegal process to take place on school grounds was the main factor in causing severe harm to Plaintiffs.

105.)    In violating Plaintiffs' right to be free from false arrest and the securities of being safe in school, the Defendants violated Plaintiffs' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

106.)   As a direct and proximate result of the violation of Plaintiff's constitutional right to be free from false arrest by the Defendants, Plaintiffs suffered serious emotional  injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

## Count VII

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §§1983, 1981
### (Emotional Distress)

107.)   Plaintiffs re-allege by referencing the allegations set forth in paragraphs 1-63 of this Complaint.

108.)  Plaintiffs allege that Defendants,  with the power to prevent, allowed harm by allowing the Police Officer to remove "Pxx" from classroom with no CPS personnel present.

109) Plaintiffs allege that Defendants, with the power to prevent, and after being told that the Police Officer requested that "Pxx" come back to  King College Prep, during school hours, the following day, to be arrested, having at Defendants Disposal to use expertise opinion to verify procedures and rules, was silent.

110.)    If it so warranted an arrest, Plaintiffs were seeking an opportunity for Common decency to delivery "Pxx" to the juvenile detention center as responsible parents and not in the harmful way in which defendants allowed.

111.)  Plaintiffs allege that after thoroughly questioning Plaintiff "Pxx", with no parent, and no Chicago Public School employee present, and gathering all necessary details about the alleged incident at Leo High School does not  follow Chicago Board of Education  Operational Procedural Manual  as to practice,custom and due process.

112.)  In committing acts each Defendant negligently breached their duty by the intentional inflection of emotional distress, which directly resulted in more severe emotional distress injuries to Plaintiffs as alleged.

113.) Plaintiffs feel the humiliation of allowing the Police Department to dictate when a student can be brought to the school to be arrested caused harm and injury.

114.) "Pxx" and Plaintiffs feel the humiliation of being brought into the school, in front of "P"'s peers, handcuffed, charged and found guilty all within a twenty-four period to be cruel and unusual punishment.

<u>Prayer for Relief</u>

A.) The Plaintiffs pray that all records with regard "Pxx"'s arrest, be expunged or destroyed so by the order of the court.

B.) The Plaintiffs are requesting that as a result this attack on Plaintiff's "Pxx"'s present and future well being, that a full college scholarship fund be constructed by the defendants, on behalf of "Pxx", to help underline and drive "Pxx" innocence request toward future success.

C.) The Plaintiffs are requesting, by order, expeditiously, that all severe medical needs, both present and future, are provided by Defendants to Plaintiffs.

D.)                                    **Damages:**

   1.)   We are asking the court for amount of controversy to be 2.5 million dollars (Protected) in relief as result of the long term severe impact to Plaintiffs.

   2.)  Plaintiffs are asking for the relief make restitution for administrative costs and any and all associate costs in relationship this petition.

   3.) The Plaintiffs are asking that any findings or matters of facts or matters of law be incorporated in this petition for and as relief.

E.)    Finally, the Plaintiffs allege and are informed that Defendants and Counsels may come and answer with a motion to dismiss, under the disguise of pretentious intent or with faults within this pleading; and the response is simply that the plaintiffs sworn no absolute expertise of law, but without help come humbly before the court seeking only real justice.

F.)    We, the plaintiffs argue for judicial prudence of the court and not allow motion, but rather to allow the plaintiffs to be heard, for the court to correctly balance the letter of the law and speak law facts with volume.

G.)  A jury for the trial of this matter.

**We, the plaintiffs have petitioned this court with the Truthfulness of facts against defined and charged Defendants; we place mercy, prayer and with God Speed that judgment is favorable and final.**

**54.)    Therefore, the Plaintiffs affix their signatures to this petition without reservations and with good faith:**

1.) _William Piphus_____ dated _9/_____

2.) _JoAnn Piphus_____ dated _9-11-2012_

3.) _____ dated _____

William Piphus and JoAnn Piphus

7624 S. Lafayette Chicago, Illinois 60620

773-483-0335

**55.)    Concludes.**

Page 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

## A, B and C

**(A)**

**Profile**

**"Pxx"**

As the Parent's of Joanna Piphus, we have attempted to develop a positive and righteousness of character to define our daughter. We have, over the last fifteen years, worked continuously to instill the positive values of right/ wrong, of family and God. Our grand strategy for our daughter's future was to craft an academic scholar to measure both our knowledge and over the objections of our own limitations to allow her to have the tools of chance for the many possibilities in life. Thus, we firmly believed, quite possible, through academic excellence. From the time of kindergarten to high school, straight A and Valedictorian, we have carefully measured and controlled a positive path and will continue to do so.

To highlight this commitment and achievement, we are presenting a recent school's project assignment completed by Joanna on "Employment and Resume Building" to profile Joanna and who she really is and the milestones purported.

This is what this incident is attempting to take away or
what is being destroyed is as follows:

**(A con't)**

# Resume

**Joanna Piphus**
**7624 South Lafayette**
**Chicago, Illinois 60620**
**Phone:   1773-483-0335**
**Young.scholar@yahoo.com**

**Professional Objective:** To Become a Science College Professor

**Work History**
- Studying
- Completing Assignments
- Home Chores

**Education:**
High School Current GPA 3.71                              Class Rank 23 /271  Percent: .08

08/-09-06/11 University Of Chicago Charter School        Graduate:  Diploma June 10, 2011
                                                                  ** Valedictorian**

Turner Drew Language Academy                             August 2008 - June 2009
Arthur Dixon Elementary School                          September 2003 - June 2008

**Activities:**
- Volleyball
- Swimming
- Media Club
- Yearbook
- Track

**Interests:**
- Graphic Design
- Science/Technology
- Salem Youth Ministry

**Experience:**
Word Processing: I can utilize Microsoft Word, Microsoft Excel, and Powel Point.

**(A con't)**

Photoshop: I design pictures and posters using Photoshop for family, friend, and events.
Community Service: I passed out food at Evangelic Ministry Church and participated in the Chicago Food Depository Walk for Hunger

**Achievements:**

**Certificates:**

2012    Second Place Winner in City of Chicago - *Black History Month Essay Competition 2012: King College Prep High School. Sponsors: American Bottling Group, Roosevelt University and Chicago Public Schools CPS Rewards: Plaque, camera and photo printer and dinner at Walter Payton high school*

2011    Completion: Awarded  University of Chicago Charter School -    **\*Diploma \*** June 2011
            Plaque: **Valedictorian ** University of Chicago Woodlawn 2011

2010    PRESIDENT'S EDUCATION AWARDS PROGRAM - PREESIDENT'S AWARD FOR EDUCATOINAL EXCELLENCE   "In *recognition of OUTSTANDING ACADEMIC EXCELLENCES*"        notes: 8th Grade  (Gold)
            Accompany Metals
                • University of Chicago Torch Awards Medal
                • University of Chicago A Honor Roll Awards Medal

2009/   PRESIDENT'S EDUCATION AWARDS PROGRAM - PREESIDENT'S AWARD FOR EDUCATOINAL EXCELLENCE
2010        "In *recognition of OUTSTANDING ACADEMIC EXCELLENCES*"        notes: 7th Grade (Silver)
            Accompanying Metals:
                • University of Chicago Torch Medal 2010-2009  T2
                • University of Chicago Torch Medal 2010-2009  T3
                • Principal Scholar Honor Roll Medal 2010-2009  T1
                • Principal Scholar Honor Roll Medal 2010-2009  T2
                • Principal Scholar Honor Roll Medal 2010-2009  T3
                • Science Fair Medal of Achievement 2009

2010    CHICAGO PUBLIC SCHOOLS – STUDENT SCIENCE FAIR INC.
            *"PRESENTS THIS CITATION – IN RECOGNITON OF SCIENTIFIC ABILITY AND PERFORMANCE: WATERWHEEL PADDLE"*

            ACCOMPANYING:
                • Ribbon of Excellence

            **Dixon Elementary School**

            **Certificates:**
                • Science Fair Achievement Certificate        2008
                • Honor Roll Certificate                      2008
                • Perfect Award Certificate                   2008

**(A con't)**

- Certificate Service Award "Pennies for Patients
  Campaign"                                    2008
- Perfect Attendance                           2007
- Bestowed Science Achievement Certificate     2007
- Principal's Award of Outstanding Achievement  2007
- Engineer Science Certificate                 2006
- Haiku Festival 2006 Recognition Certificate  2006
    for Poetry written by Joanna Piphus
- Principal's Award of Outstanding Achievement  2006
- Outstanding Student of Month Certificate     2006/2005
- Principal's Award of Outstanding Achievement  2005
- Honor Roll "A" Certificate                   2005
- Certificate of Citizenship - Student of the Year  2005
- Honor Roll Certificate                       2004

**Trophies**

- Honor Roll 3rd Marking Period              2007-2006
- Principal's Award Academic Achievement 2007-2008
- Science Fair 1st Place                     2007-2008
- Science Fair 3rd Place                     2005-2006
- DES Perfect Attendant Award                  2007-2008
- Honor Roll 4th marking period                2004-2005
- Principal's Award "A" Honor Roll             2006-2007
- DES 3rd marking "A" Honor                  2007-2008
- Certificate for  Perfect Attendances         2005-2006
- Principal's Apple Achievement Award          2006-2007

**Medals**

- Flaming  Achievement Medal          2003-2004
- Science Fair Achievement Medal      2008-2009
- Reaching for the Stars Medal        2005-2006
- Drum Corps Medal                    2007-2008
- Citizens Medal                      2007-2008
- "A" Honor Roll  Medal               2007-2008
- Music Mastery Medal                 2006-2007
- Genie Achievement Medal             2004-2005
- Honor Roll Medal                    2003-2004

**(A con't)**

**Plaques**
- Science Fair 1st Place          2007-2008
- Special Recognition – Achievement    2003-2004
- Special Recognition – Achievement    2004 -2005
- 3rd Place Science Fair          2005- 2006
- Principal's Apple Award         2004 -2005

**Ribbons**
- 1st Place Volleyball        2007-2008
- 2nd Place Relay          2005-2006
- 1st Place   Relay          2005-2006
- 1st Place   Relay          2005-2006
- 4th Place   Relay         2005-2006
- 3rd PLACE DES Science Fair    2005-2006

**Tuner Drew Language Academy**
- Certificate of Honor Roll "A/B"    2009
- Certificate of Honor Roll "A/B"    2008
- Certificate of Achievement JA     2009
- Certificate Global Marketplace     2008

**Preschool**

- Certificate of Fun – Spelling Bee   2002

- Certificate of Fun – Spelling Bee   2001

**** 

How do you amend a culture that was built upon "officer friendly;" where respect and help were clearly defined and engraved: and where the greatest memories from interactions and relationships were receiving coloring books? Have we painted a picture of a ghetto mentality and are we that type of family; is our daughter the "hood rat" that some now say she is; and is she the "low class whore" that others are now professing she is? Peer pressure is a searing force. Worse is there nothing you can do about it. Character assassination is worse yet – you are left to live with it unabated and so surreal, and it hurts.

                                            **The Parents**

                                            **we pray**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2**

**CHICAGO POLICE DEPARTMENT**

# ORIGINAL CASE INCIDENT REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03-C)

RD #: **HV213479**

EVENT #: **1208501389**

Case ID: 8536700 CASR229

ASSIGNED TO SUPERVISOR

| | |
|---|---|
| **IUCR:** 0460 - Battery - Simple | |
| **Occurrence** 7901 S Sangamon St | **Beat:** 0621 |
| **Location:** Chicago IL | |
| 299 - School, Private, Grounds | |
| **Occurrence Date:** 24 March 2012 23:00 | |

**Unit Assigned:** 0434R
**RO Arrival Date:** 25 March 2012 02:35

**# Offenders:** 1

CHICAGO POLICE DEPARTMENT

**ORIGINAL CASE INCIDENT REPORT**

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03-C)

RD #: **HV213479**

EVENT #: **1208501389**

Case ID: 8536700    CASR229

## ASSIGNED TO SUMMARY

**IUCR:** 0460 - Battery - Simple

| | | | |
|---|---|---|---|
| **Occurrence Location:** | 7901 S Sangamon St | **Beat:** 0621 | **Unit Assigned:** 0434R |
| | Chicago IL | | **RO Arrival Date:** 25 March 2012 02:35 |
| | 299 - School, Private, Grounds | | **# Offenders:** 1 |
| **Occurrence Date:** | 24 March 2012 23:00 | | |

## PARENT/GUARDIAN - Individual

| | Demographics | |
|---|---|---|
| Name: ▓▓▓▓ | Female | **DOB** ▓▓▓▓ |
| Res: ▓▓▓▓    **Beat:** ▓▓▓▓ | White Hispanic | **Age:** |
| **Beat:** 5100 | | |

## VICTIM - Individual

| | Demographics | |
|---|---|---|
| Name: ▓▓▓▓ | Female | **DOB** ▓▓▓▓ |
| Res: ▓▓▓▓    **Beat:** ▓▓▓▓ | Black | **Age:** |
| **Beat:** 5100 | | |
| **Sobriety:** Sober | | |

## INJURY - Victim

| | | |
|---|---|---|
| Injured by offender | **Injury Extent:** Minor | |
| | **Hospital:** ▓▓▓▓ | |
| **Type** | **Weapon Used** | **Other Weapon Used** |
| Bruised | Hand/Feet/Teeth/Etc. | Other - Hands And Feet |

## SUSPECT #1

| | Demographics | | |
|---|---|---|---|
| **Name:** UNK FEMALE | Female | **Age:** | 17 years |
| | 5'06, | | |
| | 130 lbs | | |
| | Brown Eyes | | |
| | Black Hair | | |
| | Short Hair Style | | |
| | Dark Complexion | | |

**Description**

**Clothing Description:** Top - Sport Bra Halter Top; Bottom - Multi - Use As Mul/Col Leggings Other

## SUSPECT #2

**Name:** OFFENDER(S)-NO DETAILS    Demographics

RD #: HV213479

| | | |
|---|---|---|
| Print Generated By: SANDOVAL,MATTHEW | Page 1 of 2 | 13-JUN-2012 13:42 |

**Chicago Police Department - Incident Report**    RD #:  HV213479

SUSPECTS

RELATIONSHIP

(Victim) ▬▬▬▬▬▬▬    is a   No Relationship of    ( Offender )
**UNK FEMALE**

(Victim) ▬▬▬▬▬▬▬    is a   No Relationship of    ( Offender )
**OFFENDER(S)-NO DETAILS**

DOMESTIC INFO

OTHER    Misc Incidents

Victim Information Provided    Flash Message Sent ? No

NARRATIVE

EVENT 01389 IN SUMMARY, UPON ARRIVAL TO ▬▬▬▬▬ HOSPITAL ▬▬▬▬▬ (VICTIM) RELATED THAT AFTER A VERBAL ALTERCATION, THE UNKNOWN FEMALE OFFENDER SHOVED HER TO THE GROUND AND BEGAN HITTING HER ABOUT THE FACE A BODY WITH HER FISTS AND FEET. OTHER OFFENDERS THEN JOINED IN. ▬▬▬▬ ▬▬▬▬▬▬ (VICTIM) DID NOT KNOW THE OFFENDER. ▬▬▬▬▬▬▬▬ (VICTIM) IS EXPECTED TO BE TREATED AND RELEASED FOR HER INJURRIES.
REPORTING OFFICER - STAR#:  NAME:  KENNEDY BEAT: 0434R

PERSONNEL

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 1226 | ▬▬▬ | KAPA, Christoph, J | ▬▬▬ | 25 Mar 2012 05:17 | 004 | |
| Detective/Investigator | 21198 | ▬▬▬ | LAZZARA, Steven, J | ▬▬▬ | 26 Mar 2012 09:21 | 620 | |
| Reporting Officer | 16016 | ▬▬▬ | CHRISTENSEN, Amy, C ) | | 25 Mar 2012 03:08 | 004 | 0434R |

ARRR222



# CHICAGO POLICE DEPARTMENT
Bureau of Investigative Services / Youth Investigations Group

3510 South Michigan Avenue/Chicago, IL 60653



Page 1 of 1

## INFORMAL STATION ADJUSTMENT

CPD-24.137 (3/99)

| Y# : | | CB # : 18372433 | | RD # : HV213479 | | [ ] *Override* |
|------|--|------------------|--|-----------------|--|-------------|

*Name :* **PIPHUS, JOANNA**        *Sex :* **FEMALE**    *Race :* **BLACK**        *DOB :* **02-MAR-1997**

*Address :* **7624 S LAFAYETTE AVE  CHICAGO  IL 60620**                *Phone :* **7734830335**

*Charges :* **BATTERY – CAUSE BODILY HARM**        [ ] *MCC*  [X] *Misdemeanor*  [ ] *Felony*

*Override:* *Youth Div Supervisor :*                    *ASA :*

*Dist. Of Arrest :* **002**        *Arresting Officer(s) :* **GROSS, KARYN / BROWN, DENNIS**

[ ] *Miranda Warnings Administered*    [ ] *Previous History Attached*

*Summary :* **M/R arrested for battery.  Inf. Released to parent.**

| *Felony:*  *Formal Adj:* **0** | *Informal Adj:* **0** | *MDM*    *Formal Adj:* **0** | *Informal Adj:* **0** | *Total:* **0** |
|---|---|---|---|---|

### SPECIFIC CONDITIONS HEREIN IMPOSED

*Informal Adjustment Begins :*                    *Informal Adjustment Terminates :*

If Minor refuses to or fails to abide by the conditions of this Informal Station Adjustment, the Youth Investigator may impose a Formal Station Adjustment or refer the matter to the State's Attorney's Office.

    I understand and fully agree to the terms and conditions described above.

*Signature of Minor :* _____        *Date :* _____

*Parent/Guardian :* _____        *Signature :* _____

*Address :* _____        *Phone :* _____

*Father :* **PHIPUS, WILLIAM**    *Address :* **7624 S LAFAYETTE AVE  CHICAGO IL 60620**    *Phone :* **773-483-0335**

*Mother :* _____    *Address :* _____    *Phone :* _____

*Youth Investigator :*        *Unit :*        *Supervisor :*

*Signature :*                        *Signature :*

*Informal Station Adjustment Completed:* [ ] *Successfully* [ ] *Unsuccessfully*  *Date Adjustment Violated :* _____

*Conditions Violated .*

*Youth Investigator :* _____    *Unit :* _____    *Date :* _____

**Exhibit 3**

**Source: Rossi, Rosalind. <u>Cops in School too Costly: CPS</u>. Oct 25, 2011. Chicago Sun-Times.**
**http://www.suntimes.com/news/metro/6298235-418/cops-in-schools-too-costly-cps.html**

**(...)**

"We're looking at if we need two police officers in every high school all day long. My guess is we don't," CPS Chief Administrative Officer Tim Cawley told the Chicago Sun-Times.

"We hope to reduce our expenses in that area, but only in those schools where we can do that without compromising safety."

Some schools may not need any officers; others might be able to get by with only one, Cawley said. Or, off-duty officers could be hired instead of on-duty police, Cawley said.

**The uniformed officers, stationed in high school rooms outfitted with police department computers, are supposed to provide <u>"a presence"</u> — especially at arrival and departure times, Cawley said. They also can help with weapons screenings, record school problems and provide a quick response to any "ruckus," he said.**

**(...)**