# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM PIPHUS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 12 CV 7257 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Pro se Plaintiffs William and Joann Piphus (collectively, "Plaintiffs") sue the Board of Education of the City of Chicago (the "Chicago Board of Education"); Jean Claude Brizard ("Brizard"), Chief Executive Officer of Chicago Public Schools; Jeff Wright ("Wright"), Principal at King College Preparatory High School; Leeandra Khan ("Khan"), Assistant Principal at King College Preparatory High School (collectively, "CPS Defendants"); and Rahm Emanuel (the "Mayor"), Mayor of the City of Chicago, on behalf of their minor daughter ("Pxx") for violations of the First, Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, and for various Illinois state-law violations, including, intentional and or negligent infliction of emotional distress, negligence, false arrest, failure to implement policy, customs and practices, and civil conspiracy. Before the Court is the Mayor's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Plaintiffs' pleading titled, "Plaintiffs Motion of Good Cause." For the following reasons, Plaintiffs' motion is denied, and the Mayor's motion is granted.

# I. BACKGROUND[1]

Plaintiffs' daughter, Pxx, was arrested by Chicago police officers at King College Preparatory High School on March 27, 2012. The day before, on March 26, 2012, Khan, Assistant Principal at King College Preparatory High School, called Plaintiffs to notify them about two issues: (1) images on Pxx's social media page, Twitter, which school administration perceived as pornographic; and (2) potential charges against Pxx for assault and battery of a Leo High School student. Plaintiffs met with Khan in her office at which time she showed Plaintiffs their daughter's Twitter page, depicting Pxx wearing what school administration believed were "yellow panties" with the caption "Chubby Baby" and "Kiss my Pink Box." Compl. ¶¶ 18-20. Plaintiffs explained that their daughter was wearing "hot pants," not "panties" in the photograph, id. ¶ 18; and, that "Chubby Baby" was a family nickname, id. ¶ 20. Following this meeting, Plaintiffs asked to see their daughter and learned that Pxx was being interrogated by two police officers without the presence of a Chicago school staff member.

Khan took Plaintiffs to the police officers' assigned office within the school. Pxx was sitting outside of the office. An officer explained that a minor and her parents wanted to press criminal charges against Pxx. The officer brought all of the parties into the office at which time the minor claimed that while she was hit and kicked at a Leo High School party in the school's gymnasium, she looked up and saw Pxx's face. The officer also explained that Pxx was being charged because on her Twitter page she stated that "we beat that girl good," and had pictures of blood from the Leo High School gymnasium floor. The officer, however, did not arrest Pxx on March 26, 2012. Instead, he instructed Plaintiffs to bring Pxx back to school the next day to be charged and arrested.

Plaintiffs then spoke to Wright, and asked whether Pxx would be suspended. Wright

---

[1] The Court takes the following facts from Plaintiffs' Complaint and the exhibits attached thereto.

2

stated that he would write it up and get back to them, noting that it would possibly be a level 3 or 5 violation of school policy. Plaintiffs informed Wright of the arrest, to which Wright responded that "once it becomes a police matter, we have nothing to do with it." Id. ¶ 36. Plaintiffs also allege that the same response was given by Mr. Wagner when they called Chicago Public School Safety and Security. Plaintiffs then called Chicago Public School Headquarters and were referred back to Mr. Wagner.

On March 27, 2012, Plaintiff William Piphus again asked Wright about Pxx's suspension, but Wright had no further information. At 11:00 a.m., Plaintiffs brought Pxx to the school. Upon entering the school, Plaintiffs ran into Khan and asked her about the suspension, and were told that Pxx would not be suspended. School personnel sent Plaintiffs and Pxx to the police officers' office inside the school, where Pxx was handcuffed and then transported by another set of police officers to the Juvenile Intervention and Support Center. Pxx was charged with battery.

On March 28, 2012, neither Wright, nor the Chicago Board of Education responded to Plaintiffs about the incident, which they claim was against the law and carried out without due process. Shortly thereafter, Wright sent a letter to the King College Preparatory High School community stating that he was resigning and taking a new position in Wisconsin.

From March 27, 2012 to present, Plaintiffs have sought the following information from the Chicago Board of Education and the Chicago Public School Safety and Security staff: (1) the established procedures used when a person comes into a school, seeking to press charges against a student for alleged illegal acts committed off campus; (2) whether King College Preparatory High School is a police station or a school; (3) the written report of the incident regarding Pxx; (4) whether Chicago Public School Safety and Security or the Chicago Police Department is in

charge of safety and security in Chicago public schools; and (5) how the school could allow police officers to remove Pxx from a classroom without notifying the parents and without Chicago Public School personnel being present during the interrogation. Plaintiffs further allege that there is a double standard at King College Preparatory High School because a police officer's son who instigated a fight was not disciplined by the Chicago Board of Education.

Plaintiffs initiated the instant lawsuit against the CPS Defendants and the Mayor on September 11, 2012, alleging violations of the United States Constitution, federal laws, and Illinois state-laws. The individual officers are not parties to this lawsuit. However, Plaintiffs have sued the officers separately in a lawsuit that remains pending in this District. Piphus v. City of Chi. Police Dep't., No. 12 C 7259 (filed N.D. Ill. Sept. 11, 2012). The Mayor's motion to dismiss is fully briefed and before the Court. Also before the Court is Plaintiffs' pleading titled, "Plaintiffs Motion of Good Cause."

## II. DISCUSSION

### A. Standard of Decision

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, a plaintiff's complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks and citation omitted). The Court construes Plaintiffs' pro se pleadings liberally, see Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008), accepts as true all well-pleaded facts in the Complaint, and draws all reasonable inferences in their favor, D.B. ex rel. Kurtis B. v. Kopp, 725 F.3d 681, 682 (7th Cir. 2013) (citing McReynolds v. Merrill Lynch & Co., 694 F.3d

873, 879 (7th Cir. 2012)). A plaintiff, however, may plead himself out of court by "pleading facts that establish an impenetrable defense to its claims." Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) (citing Massey v. Merrill Lynch & Co., 464 F.3d 642, 650 (7th Cir. 2006)); see also Atkins v. City of Chi., 631 F.3d 823, 832 (7th Cir. 2011) ("[A plaintiff] can plead himself out of court by pleading facts that show he has no legal claim." (citations omitted)). Pleadings consist of "the complaint, any exhibits attached thereto, and the supporting briefs." Cole v. Milwaukee Area Technical Coll. Dist., 634 F.3d 901, 903 (7th Cir. 2011) (citing Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002)). "Dismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010) (quoting Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 694 (7th Cir. 1999)).

### B. Plaintiffs' Motion of Good Cause

As an initial matter, the Court notes that Plaintiffs' pleading captioned, "Plaintiffs Motion of Good Cause," was filed without the notice of presentment as required by Local Rule 5.3(b). Pursuant to Local Rule 5.3(b), "[e]very motion or objection shall be accompanied by a notice of presentment" and "[t]he date of presentment shall be not more than 14 days following the date on which the motion or objection is delivered to the court." N.D. Ill. LR 5.3(b). Although the Court construes Plaintiffs' pro se pleadings liberally, it is "well established that pro se litigants are not excused from compliance with procedural rules." Pearle Vision, Inc., 541 F.3d at 758 (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). Because Plaintiffs failed to comply with Local Rule 5.3(b), and to date have failed to serve notice of a date of presentment, the motion is denied. N.D. Ill. LR 78.2 ("Where the moving party . . . delivers a motion . . . without the notice required by LR 5.3(b) and fails to serve notice of a date of presentment within 14 days of

5

delivering the copy of the motion . . . as provided by LR5.4, the court may on its own initiative deny the motion . . . ."). To the extent the pleading is in fact a sur-reply to the Mayor's motion, the Court declines to consider the pleading as it was filed without leave of court.

## C. Motion to Dismiss

In Count II, Plaintiffs allege a § 1983 claim against the Mayor in his official capacity. Plaintiffs' claim against the Mayor in his official capacity is treated as a claim against the City of Chicago itself. Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008) (citing Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006)). "To establish municipal liability [under § 1983 and Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690 (1978)], a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." Teesdale v. City of Chi., 690 F.3d 829, 833 (7th Cir. 2012) (quoting Estate of Sims v. Cnty. of Bureau, 506 F.3d 509, 514 (7th Cir. 2007)) (addition citation omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citations omitted).

Here, Plaintiffs allege that the Mayor has a duty to ensure that Chicago Public Schools "create a concise and specific set of rules, policies and tactical agenda regarding strangers entering the school to press charges against a Chicago Public School student." Compl. ¶ 70. Plaintiffs further allege that by allowing police officers to be placed in Chicago Public Schools, the City of Chicago, through the Mayor, has "created a Police State within the schools, which is not governed by any prescription of the laws." Id. ¶ 71. Plaintiffs also allege that the Mayor's failure to implement appropriate policies, customs, and practices has caused them emotional

distress. Fatal to Plaintiffs' claim, however, neither the Mayor, nor the City of Chicago has the power to set policies or practices for Chicago Public Schools. Rather, the Chicago Board of Education—a separate and distinct municipal entity—has "full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." Duda v. Bd. of Educ. of Franklin Park Pub. Schl. Dist. No. 84, 133 F.3d 1054, 1061 (7th Cir. 1998) (citing 105 Ill. Comp. Stat. 5/10-20.5); see also 105 Ill. Comp. Stat. 5/34-19 ("The board shall, subject to the limitations in this Article, establish by-laws, rules and regulations, which shall have the force of ordinances, for the proper maintenance of a uniform system of discipline for both employees and pupils, and for the entire management of the schools . . . ."). Indeed, the City of Chicago is "prohibited from exercising the powers of the Board [of Education]." City of Chi. v. Riley, 157 N.E.2d 46, 49 (Ill. 1959) (citation omitted).

Plaintiffs argue that the Mayor nonetheless exercises control as final authority and policy maker because, *inter alia*, he "hires and supervises Mr. Brizard as the Chief Executive Officer over the Chicago Board of Education," and has met with Brizard on policies regarding safety and security in schools. Pls.' Resp. Mot. to Defs.' Answer to Dismiss Pls. Compl. 8. These arguments are wholly without merit. "[T]he power to appoint is not the power to control. Especially when that power is diffused among different public officials who may hold quite different views of how the entity should conduct itself." Takle v. Univ. of Wis. Hosp. & Clinics Auth., 402 F.3d 768, 770-71 (7th Cir. 2005) (citations omitted). Moreover, "the Mayor does not subjugate the Board to him simply by using forceful language, making recommendations, or promising the residents of Chicago that he will push for certain policies." McDaniel v. Bd. of Educ. of City of Chi., No. 13 C 3624, 2013 WL 3456941, at *9 (N.D. Ill. July 9, 2013). Because it appears beyond doubt that Plaintiffs cannot establish that the alleged action pursuant to official

municipal policy caused their injuries, they have legal claim under § 1983; and, have therefore pleaded themselves out of court. See Wilson, 624 F.3d at 392. Accordingly, Count II, the only claim against the Mayor, is dismissed.

### III. CONCLUSION

For the foregoing reasons, the Mayor's motion is granted. Count II of Plaintiffs' Complaint is dismissed with prejudice.

IT IS SO ORDERED.

ENTER:

*(signature)*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: January 31, 2014